IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JA'VONCE WARRE,

Plaintiff,

v.

PORTFOLIO SERVICES LIMITED, INC.,
a Texas corporation; PORTFOLIO SE,
INC., a Texas corporation; and EXPRESS
SYSTEMS, INC., a California corporation,

Defendants.

No. 3:23-cv-00391-HZ

OPINION & ORDER

Joseph Wagner
Joseph Wagner Law Office
1220 Main Street, Suite 400
Vancouver, WA 98660

      Attorney for Plaintiff

Joshua D. Stadtler
Grant M. Elder
Dunn Carney Allen Higgins & Tongue LLP
851 S.W. Sixth Avenue, Suite 1500
Portland, OR 97204-1357

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF 17. For the reasons that follow, the Court grants Defendants' Motion.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and the parties' filings related to Defendant's Motion to Dismiss.

On November 29, 2018, Plaintiff Ja'Vonce Warre purchased a 2019 Jeep Cherokee from Northwest Jeep Chrysler Dodge ("NW Jeep").[1] Compl. ¶ 7; Kim Decl., ECF 19, Ex. 3 at 1. Plaintiff financed $42,852.42 through NW Jeep comprised of the price of the vehicle, various license and title fees, $4,914.39 in a loan balance on the vehicle Plaintiff traded in for the 2019 Jeep, and $450 for a guaranteed asset protection ("GAP") waiver. Kim Decl., Ex 1 at 1; Ex. 3 at 1. The GAP waiver stated it amended the retail sales contract between the "Customer/Borrower (I, You, or Your)" defined as Plaintiff and the "Dealer/Financial Institution (We, Us, or Our)" defined as NW Jeep. *Id.* Ex. 1 at 1. "Defendants were not parties to the sale of the vehicle or the GAP waiver." Compl. ¶ 8.

The GAP waiver provided in relevant part:

> In the event of a **Total Loss** to the **Covered Vehicle**, **We** agree to waive **Our** rights against You for the amount due under a **Payable Loss**.
>
> * * *
>
> **ASSIGNMENT**: This GAP Addendum is between the **Customer/Borrower (I, You or Your) and the** Dealer/Financial institution (We, Us or Our), or if assigned, with the assignee.

---

[1] NW Jeep is not a party to this action.

*Id.*, Ex. 1 at 1 (emphasis in original). The GAP waiver included the following relevant definitions:

> **Payable Loss** means the difference between the **Unpaid Net Balance** and the **ACV** [actual cash value] of the **Covered Vehicle** on the **Date of Loss**.
>
> * * *
>
> **Unpaid Net Balance** means **Your** outstanding balance as of the **Date of Loss**. This does not include . . . deferred payments and charges. . . .

*Id.*, Ex. 1 at 2 (emphasis in original). Plaintiff checked the box at the bottom of the GAP waiver form that indicated she had "reviewed the benefits with [her] [NW Jeep] dealer representative [and] . . . elect[ed] to purchase" GAP coverage. *Id.* The GAP waiver listed the GAP administrator as Defendant Express Systems, Inc.

At some point the financing of Plaintiff's auto loan was assigned by NW Jeep to Alaska Federal Credit Union ("Alaska Federal").[2]

On December 11, 2021, Plaintiff "was involved in an accident and her vehicle was deemed to be a total loss." Compl. ¶ 13. At the time of the loss Plaintiff's balance owed on her automobile loan was $33,494.67. "Insurance covered $27,640.10." Compl. ¶ 14. Plaintiff, therefore, still owed $5,854.57 on her automobile loan after her insurance payment. At some point Plaintiff made a claim for GAP coverage and in March 2022 "Defendants calculated that the GAP Benefit owed to [Plaintiff] was $9.81." Compl. ¶ 15.

Plaintiff "inquired with NW Jeep . . . as to why coverage only applied $9.00," but NW Jeep stated it "did not know." Compl. ¶ 16. Plaintiff requested a written explanation "from the GAP contract administrator - the Defendants," who "provided a generic response that provided little to no insight as to why the entirety of the remaining balance was not paid out." Compl.

---

[2] Alaska Federal is not a party to this action.

¶¶ 17-18. Alaska Federal provided Plaintiff with "information of payments and relayed that the exclusion could be due to previous deferred payments." Compl. ¶ 21.

On January 30, 2023, Plaintiff filed a complaint in Washington County Circuit Court against NW Jeep and Alaska Federal seeking damages and coverage under the GAP waiver.

On March 17, 2023, Plaintiff filed a Complaint in this Court against Express Systems, Inc.; Portfolio Services Limited, Inc.; and Portfolio SE, Inc,[3] and asserts claims for violation of Oregon's Unfair Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646A.776; fraudulent misrepresentation; negligent misrepresentation; and tortious interference with contract.

On June 22, 2023, Defendant filed a Motion to Dismiss Plaintiff's Complaint. The Court took the Motion under advisement on August 17, 2023.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations

---

[3] The Complaint does not indicate the relationship of Portfolio Services Limited, Inc., and Portfolio SE, Inc., to this case or include specific allegations as to these parties. Plaintiff alleges only that "Gap Express offers and administers its GAP . . . waiver management products to dealerships across the state of Oregon. Here Defendant sold its product and services to NW Jeep." Compl. ¶ 3. In addition, the GAP waiver identifies only Defendant Express Systems as the GAP administrator.

must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote

omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-

pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.*

at 679.

On a motion to dismiss, the court "may consider materials incorporated into the

complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

Cir. 2010)(citations omitted). The Ninth Circuit has "extended the doctrine of incorporation by

reference to consider documents in situations where the complaint necessarily relies upon a

document or the contents of the document are alleged in a complaint, the document's authenticity

is not in question and there are no disputed issues as to the document's relevance." *Id.* (citing

*Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705,

706 n.4 (9th Cir. 1998), *rev'd* by statute on other grounds).

## DISCUSSION

### I.    Request for Judicial Notice

Defendants include with their Motion to Dismiss a request for judicial notice. ECF 17. To

the extent that the Court relied on the documents attached to the Declaration of Joshua Stadler,

ECF 18, and the Declaration of Sora Kim, ECF 19, which consist of a court filing and business

records referenced in the Complaint, Defendants' request is granted because facts in those documents are "not subject to reasonable dispute" and/or the Complaint necessarily relies on the documents or the contents of the documents are alleged in the Complaint, the documents' authenticity is not in question, and there are no disputed issues as to the documents' relevance. *See Coto Settlement,* 593 F.3d at 1038 (The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."); *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003)(quoting Fed. R. Ev. Rule 201(b)(2)("Facts are indisputable, and thus subject to judicial notice, only if they are . . . 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'")); *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1122–23 (D. Or. 2013)(citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir.2006)("A court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated.")).

## II.    UTPA Claim

Plaintiff asserts Defendants violated § 646A.776[4] when they failed to disclose in the GAP waiver in plain and easily understandable language:

> a.    Conditions under which the creditor will waive or decline to waive all or a portion of the obligation of the obligation that remains under a finance agreement [and]

---

[4] Or. Rev. Stat. § 646A.790 provides that a violation of § 646A.776 is an unlawful trade practice under Or. Rev. Stat. § 646.608. In addition, § 646.608(1)(aaaa) provides that "[a] person engages in an unlawful practice if in the course of the person's business . . . the person . . . [v]iolates a provision of ORS 646A.770 to 646A.787."

        b.      The methodology for determining the amount the creditor will waive; and the length of the evaluation period.

Compl. ¶ 33.

Defendants move to dismiss this claim on the basis that (1) § 646A.776 does not apply to the GAP waiver because § 646A.773 expressly excludes this type of GAP waiver from § 646A.776; (2) § 646A.779 does not require GAP waivers to cover deferred payments, therefore, whether Plaintiff knew those payments were covered or not is immaterial because they are not required to be covered; and (3) § 646A.776 creates statutory duties only for the sale of GAP waivers, not the drafting or administration of GAP waivers.

### A.    § 646A.773 Exclusion

Defendants asserts § 646A.776 does not apply to the GAP waiver because § 646A.773 expressly excludes this type of GAP waiver from § 646A.776. Section 646A.773 provides in relevant part:

> ORS 646.770 to 646A.787 do not apply to:
>
>                          * * *
>
> An addendum to a finance agreement that is sold or assigned to a *licensee,* as defined in ORS 725.010, and that is secured by a motor vehicle, under the terms of which a creditor agrees to waive the creditor's right to collect all or part of an amount due from a borrower under the terms of the finance agreement or to release the borrower from an obligation to pay the creditor an amount due under the finance agreement if the motor vehicle:
>
>     (i) Suffers physical damage that is equivalent to a total loss; or
>
>     (ii) Is stolen and not recovered.

Or. Rev. Stat. § 646A.773(2)(d)(A)(emphasis added). Defendant asserts the GAP waiver was an addendum to a finance agreement, secured by a motor vehicle, and NW Jeep agreed thereunder

to waive its right to collect all or part of an amount due if the motor vehicle was totaled or stolen and not recovered, therefore, the provisions of § 646A.776 do not apply to the GAP waiver.

Plaintiff, however, points out in her Response that she does not allege in the Complaint that Defendants sold or assigned the GAP waiver to a licensee under Or. Rev. Stat. § 725.010, therefore, Defendant has not established that the exemption in § 646A.773 applies.

Defendants do not respond to Plaintiff's argument in their Reply and the record does not contain any evidence that indicates Defendants sold or assigned the GAP waiver to NW Jeep as a licensee under § 725.010. Accordingly, the Court declines to grant Defendants' Motion to Dismiss Plaintiff's UTPA claim on that basis.

**B.    Deferred Payments Requirement under § 646A.779**

Defendants assert the Court should dismiss Plaintiff's UTPA claim because Or. Rev. Stat. § 646A.779[5] does not require GAP waivers to cover deferred payments, therefore, whether Plaintiff knew those payments were covered or not is immaterial because they are not required to be covered. Defendants' argument misses the mark. Plaintiff does not allege Defendants violated the UTPA because they failed to cover deferred payments. Plaintiff alleges Defendants violated the UTPA when they failed to "disclose . . . in plain and easily understandable language . . . [t]he terms and conditions of the guaranteed asset protection waiver, including but not limited to: Conditions under which the creditor will waive or decline to waive all or a portion of the obligation that remains under a finance agreement." Or. Rev. Stat. § 646A.776(1)(c)(A). Whether or not the GAP waiver covered deferred payments, § 646A.776 requires the seller of a GAP waiver to disclose the conditions under which the creditor will

---

[5] Or. Rev. Stat. § 646A.779(2)(a)(B) provides: "A guaranteed asset protection waiver need not require a creditor to waive . . . [d]elinquent, missed or deferred payments."

decline to waive obligations in plain and easily understandable language. The Court, therefore, declines to grant Defendants' Motion to Dismiss on the basis of § 646A.779.

### C.    Administration of GAP Waivers

Defendants assert § 646A.776 creates statutory duties only for the sale of GAP waivers, not the drafting or administration of GAP waivers; Defendants did not sell the GAP waiver to Plaintiff; and, therefore, Plaintiff cannot state a claim for violation of § 646A.776.

As noted, § 646A.776 provides a "person may not *sell* a [GAP] waiver *in connection with* the sale of a motor vehicle that is used for personal . . . purposes, unless" certain conditions are met. Defendants point out that Plaintiff specifically alleges in the Complaint that "Defendants were not parties to the sale of the vehicle or of the GAP waiver," Defendant "sold its product and services to NW Jeep," and "Plaintiff purchased the GAP waiver from NW Jeep." Compl. ¶¶ 3, 4, 8. These allegations make clear that Defendants did not sell the GAP waiver to Plaintiff, nor did they sell the GAP waiver to NW Jeep in connection with the particular sale of Plaintiff's vehicle. Plaintiff, therefore, fails to allege facts sufficient to establish that Defendants sold the GAP waiver to Plaintiff in connection with the sale of her vehicle.

Plaintiff alleges in the Complaint that Defendants are liable under the UTPA because they "aided and abetted the sale of the GAP waiver." Compl. ¶ 9. Or. Rev. Stat. § 646A.776 and § 646.608, however, do not contain any language suggesting that a plaintiff may bring a claim based on aiding and abetting an alleged violation of the UTPA and Plaintiff does not cite any authority for that proposition.

When interpreting a statute, Oregon law provides courts may not "insert what has been omitted, or to omit what has been inserted" into a statute. Or. Rev. Stat. § 174.010. *See also Hoffart v. Wiggins*, 226 Or. App. 545, 549 (2009)("[C]ourts are not to insert into statutes

language that has been omitted but shall simply ascertain and declare what is, in terms or in substance, contained therein."). The Court notes the Oregon Legislature included provisions for aiding and abetting liability in other circumstances, and, therefore, the Legislature knows how to include such a provision in a statute. *See, e.g.,* Or. Rev. Stat. § 659A.010(1)(g)("It is an unlawful employment practice . . . [f]or any person . . . to aid [or] abet. . . the doing of any of the acts forbidden under this chapter or to attempt to do so"); Or. Rev. Stat. § 659A.406 ("it is an unlawful practice for any person to aid or abet any place of public accommodation . . . discrimination or restriction on account of race, color, religion, sex, sexual orientation, gender identity, national origin, marital status or age"). The Legislature, however, did not include a provision for aiding and abetting liability in § 646A.776 or § 646.608. The Court, therefore, declines to interpret either of those provisions as including liability for a person who allegedly aids or abets a violation of the UTPA.

In her Response Plaintiff also asserts Defendants are liable for the alleged UTPA violation pursuant to an agency theory. "Generally, an agency relationship 'results from the manifestation of consent by one person to another that the other shall act on behalf of and subject to his control, and consent by the other to so act.'" *Eads v. Borman*, 234 Or. App. 324, 329 (2010)(quoting *Vaughn v. First Transit, Inc.*, 346 Or. 128, 135 (2009)). "[T]he principal's 'control' over what the agent shall or shall not do is necessary for an agency relationship, but it is not, on its own, sufficient to create such a relationship." *Vaughn*, 346 Or. at 136. "In addition to the requirement that the principal have a right to control the acts of its agent, for an agency relationship to exist, both parties must also agree that the agent will act on the principal's behalf." *Eads*, 234 Or. App. at 329 (citation omitted).

In making her agency argument in her Response Plaintiff relies on legal conclusions and facts that she did not plead in her Complaint. For example, Plaintiff alleges in her Response that "[t]he GAP waiver product had the authority to bind Defendants to the actions of the seller, thus establishing agency with regard to the sale of the GAP waiver"; that Defendants "encouraged the dealership to sell Defendants' GAP waiver product as an agent for Defendants, thus making Defendants 'sellers' of the GAP waiver through its agency relationship with the dealer"; Defendants "are merely using dealerships as agents to make the sales for their financial benefit, while requiring the Dealership to use Defendants' forms and services"; "Defendants had a consensual relationship with the dealership, the primary seller in the field, who would sell its product as it dictated through the dealership, as its agent, for the profit of both entities"; and Defendants "solicit[ed] others to sell [the GAP waiver]" and "cause[d] the dealership and lender/lienholder to not pay out benefits owing under the GAP waiver contract." Resp. pp. 5-7, 9. The Complaint, however, does not allege that Defendants were agents or sellers, rather Plaintiff specifically alleges in the Complaint that Defendants were not parties to the sale of the vehicle or the GAP waiver. Plaintiff does not allege in the Complaint that Defendants had any right to control the acts of NW Jeep or Alaska Federal or that Defendants and NW Jeep agreed that NW Jeep would act on Defendants' behalf. In fact, the Complaint does not contain the terms "agency," "authority," "control," or "bind." Plaintiff, therefore, has not pled facts in her Complaint sufficient to allege any agency relationship existed between Defendants and NW Jeep or Alaska Federal much less an agency relationship that is sufficient to state a claim against Defendants under the UTPA.

In summary, Plaintiff has not alleged facts sufficient to state a claim for violation of the UTPA. Accordingly, the Court grants Defendants' Motion to Dismiss as to this claim.

## II.    Fraudulent Misrepresentation

### A.    Pleading Standard

Federal Rule of Civil Procedure 8(a) provides:  A pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "Rule 8's liberal notice pleading standard . . . requires that the allegations" provide the opposing party with "fair notice of what the . . . claim is and the grounds upon which it rests." *Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL 490992, at *1 (9th Cir. Feb. 14, 2011). With respect to allegations of fraud, however, Federal Rule of Civil Procedure 9(b) requires when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy the additional burdens imposed by Rule 9(b), the party must allege at a minimum "the time, place and nature of the alleged fraudulent activities." *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008)(citation omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give [the opposing party] notice of the particular misconduct . . . so that [it] can defend against the charge and not just deny that [it has] done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)(quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.* (quotation omitted).

### B.    Elements

To state a claim for fraudulent misrepresentation in Oregon a plaintiff must plead:

"(1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or ignorance of its truth; (5) the defendant's intent that the representation should be acted on by the plaintiff and in the manner reasonably contemplated; (6) the plaintiff's ignorance of its falsity; (7) the plaintiff's reliance on its truth; (8) the plaintiff's right to rely on the representation; (9) and the plaintiff's resulting injury."

*Taylor v. Gorilla Cap., Inc.*, No. 6:18-CV-648-MC, 2018 WL 5268609, at *3 (D. Or. Oct. 23, 2018)(quoting *Travis v. Knappenberger*, 204 F.R.D. 652, 659 (D. Or. 2001)).

### C.    Analysis

Defendants move to dismiss this claim on that basis that Plaintiff does not allege that Defendants made any representations to Plaintiff let alone materially false representations. Specifically, Plaintiff alleges in her Complaint:

> Defendants, with intent, knowledge, or with reckless regard, drafted and caused a contract at issue to be sold by NW Jeep.
>
> Defendants knew that the contract was not easily understandable, and that the exclusion provisions were unlawful and thus void.
>
> * * *
>
> Defendants utilize contradictory and void exclusions that violation of ORS 646A.776.

Compl. ¶¶ 41-42, 44. None of these facts include any allegation of representations made by Defendants to Plaintiff. On the contrary, as noted, Plaintiff alleges Defendants were not parties to the sale of the vehicle and the GAP waiver. Defendants, therefore, did not make any representations to Plaintiff regarding the GAP waiver. Plaintiff also provides no facts to support her allegation that Defendants knew the GAP waiver was "not easily understandable" and/or that its exclusion provisions were void. Plaintiff asserts in her Response that "Defendants' denial of coverage by representing exclusions to obviate coverage . . . supports a claim of fraudulent misrepresentation." Pl. Resp. at 9. It's unclear how Defendants' application of the specific terms

of the GAP waiver supports a claim for fraudulent misrepresentation. Plaintiff alleges the terms

of the GAP waiver were not stated in "plain and easily understandable language," that, however,

is a legal conclusion. In addition, if taken as true, it does not allege a materially false

representation by Defendants.

Plaintiff alleges "Defendants aiding and abetting of the sale of this GAP waiver

and managing [*sic*] constitute fraudulent misrepresentations." Compl. ¶ 45.This is a legal

conclusion and also fails to meet the heightened pleading standard of Rule 9(b). To plead a claim

for aiding and abetting fraud

> a plaintiff "must plead facts that make it plausible that defendants either
> (a) knew the other's conduct constituted a breach of duty and gave
> substantial assistance or encouragement to the other to so act or (b) gave
> substantial assistance to the other in accomplishing a tortious result and
> the person's own conduct, separately considered, constituted a breach of
> duty to the third person."

*Galaxia Elecs. Co. v. Luxmax, U.S.A.*, No. LACV1605144JAKGJSX, 2023 WL 2347085, at *22

(C.D. Cal. Feb. 1, 2023)(quoting *Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir.

2016)). Plaintiff does not allege any facts to support an inference that Defendants gave

"substantial assistance or encouragement to" NW Jeep to sell the GAP waiver to Plaintiff or gave

NW Jeep "substantial assistance . . . in accomplishing a tortious result." The record reflects

Defendants act as administrators for GAP waivers when those waivers are sold to vehicle

purchasers by automobile dealers. Plaintiff does not plead any facts that suggest Defendants

played any part in NW Jeep's sale of the GAP waiver to Plaintiff. Merely alleging Defendants

aided and abetted the sale of the GAP waiver is insufficient to meet the requirements of Rule

9(b). Plaintiff asserts in her Response that the GAP waiver was "drafted by Defendants [and] was

a representation of the coverage [Plaintiff] would receive from Defendants, the dealership, and

the lender, and a reasonable inference is that Defendants directed the dealership as to how the

product must be sold." Pl. Resp. at 10. There is no indication in the Complaint or on this record, however, that Defendants provided any coverage to Plaintiff. Rather the GAP waiver explicitly provides an agreement only by NW Jeep (or Alaska Federal after it took over the automobile loan) that it would "waive [its] rights against [Plaintiff] for the amount due under a **Payable Loss**." Kim Decl., Ex. 1 at 1 (emphasis in original). Defendants did not agree to waive any rights or to provide any payment to Plaintiff. Defendants merely administered the GAP waiver pursuant to its terms. The Complaint and the record do not contain any facts or allegations that Defendants had any control or influence over how, when, or to whom NW Jeep offered the GAP waiver for sale. Accordingly, the Court finds there are no facts to support an inference that Defendants directed NW Jeep as to how GAP waiver must be sold.

The Court concludes Plaintiff fails to state a claim for fraudulent misrepresentation and, therefore, grants Defendants' Motion to Dismiss as to that claim.

## III.    Negligent Misrepresentation

Plaintiff pleads this claim in the alternative to her claim for fraudulent misrepresentation. Plaintiff "incorporates all relevant paragraphs of [her] Complaint" and asserts Defendants "were negligent in drafting promises to provide coverage and failing to understand the legal requirements of exclusions in Oregon." Compl. ¶¶ 47, 49.

"The Oregon Supreme Court has held claims for negligent misrepresentation 'must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.'" *Ave. Lofts Condominiums Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1018–19 (D. Or. 2014)(quoting *Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159 (1992)). "In other words, for the duty to avoid making negligent misrepresentations to arise, the parties must be in a 'special relationship,' in which the

party sought to be held liable had some obligation to pursue the interests of the other party."

*Conway v. Pac. Univ.,* 324 Or. 231, 237 (1996). "Courts in Oregon have concluded such special

relationships may arise with, for example, attorneys, physicians, principals in an agent

relationship, trustees, 'pledgees,' and liability insurers 'who undertake[ ] a duty to defend.'" *Ave.*

*Lofts*, 24 F. Supp. 3d at 1019 (quoting *Conway,* 324 Or. at 239–40). "Oregon courts, however,

have made clear that a special relationship does not exist in a business transaction in which

'adversarial parties negotiat[e] at arm's length to further their own economic interests.'" *Id.*

(quoting *Onita*, 315 Or. at 161). Accordingly, the *Onita* court concluded "in arm's-length

negotiations, economic losses arising from a negligent misrepresentation are not actionable."

*Onita*, 315 Or. at 161.

Here, as noted, Plaintiff has not alleged any transaction between Defendants and

Plaintiff. Plaintiff, therefore, has not alleged sufficient facts from which the Court can infer any

relationship existed between Plaintiff and Defendants at the time that Plaintiff entered into the

GAP waiver. In addition, even if such a relationship existed, the transaction at issue was an

arm's length negotiation between Plaintiff and NW Jeep to further each of their own economic

interests. Accordingly, Plaintiff's economic losses are not actionable.

In her Response Plaintiff alleges § 646A.776 provides Defendants with a duty to

Plaintiff that is beyond the common law duty to exercise reasonable care to prevent foreseeable

harm. The Court, however, has already concluded that Plaintiff fails to establish that § 646A.776

applies to Defendants under the circumstances here.

In addition, Plaintiff does not cite any authority for the proposition that

§ 646A.776 creates the kind of "special relationship" that Oregon courts have held is required to support a claim for negligent misrepresentation. To determine whether a relationship amounts to a special relationship under Oregon law courts consider whether:

> (1) [o]ne party relinquishes control over matters, usually financial, and entrusts them to the other party, (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship.

*Bell v. Pub. Emps. Ret. Bd.*, 239 Or. App. 239, 249-50 (2010). Or. Rev. Stat. § 646A.776 does not provide that one party relinquishes control over financial matters and entrusts them to another party, nor does it create a relationship between a seller of GAP waivers and the purchaser of a motor vehicle like that between attorneys or physicians and their clients, principals in an agent relationship, or trustees. The Court, therefore, concludes Plaintiff has not established that § 646A.776 creates a special relationship of the kind necessary to support a claim for negligent misrepresentation. Accordingly, the Court concludes Plaintiff has not stated a claim for negligent misrepresentation and grants Defendants' Motion to Dismiss as to that claim.

## IV.    Tortious Interference with Contract

Plaintiff alleges

> Plaintiff had a contract with NW Jeep which was subsequently assigned to Alaska Federal Credit Union providing for GAP coverage.
>
> Defendants, pursuant to ORS 646A.776, had statutory duties to draft and administer the contract in good faith in accordance with the law, having aided and assisted NW Jeep in the offering of such coverage.
>
> Defendants, without privilege or justification, interfered by wrongfully administering the contract and thus preventing NW Jeep and Alaska Federal Credit Union from honoring their obligations.

Compl. ¶¶ 52-54.

### A.    Elements

To state a claim for intentional interference with economic relations ("IIER") in Oregon a plaintiff must allege: "(1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages." *Aitkin v. USI Ins. Servs., LLC*, 607 F. Supp. 3d 1126, 1148 (D. Or. 2022)(citing *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).

Defendants move to dismiss this claim on the basis that Plaintiff fails to sufficiently allege that Defendants' intentional interference was accomplished through an improper means or improper purpose. In her Response Plaintiff alleges only that she has adequately plead improper means, Plaintiff does not appear to assert Defendants interfered with Plaintiff's contract with NW Jeep and/or Alaska Federal with an improper purpose.

### B.    Improper Means

"'Improper means' must be some independently wrongful act such as 'violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood.'" *Aitkin*, 607 F. Supp. 3d at 1149 (quoting *Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 601 (1989)). A plaintiff may also establish that the defendant "used improper means 'by showing a violation of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.'" *Id.* (quoting *Volt Servs. Grp., Div. of Volt Mgmt. Corp. v. Adecco Emp. Servs.*, 178 Or. App. 121, 129 (2001)).

Plaintiff asserts in her Response that she has adequately alleged that Defendants interfered in her contract with NW Jeep by improper means because she has alleged that Defendants "had statutory duties" pursuant to Or. Rev. Stat. § 646A.776 "to draft and administer

the [GAP waiver] in good faith in accordance with the law" and Defendants "interfered by wrongfully administering the [GAP waiver] and thus preventing NW Jeep and Alaska Federal Credit Union from honoring their obligations." Compl. ¶¶ 53-54. The Court, however, has already concluded that Plaintiff has failed to allege facts sufficient to establish Defendants had any duty to Plaintiff under § 646A.776 or that Defendants violated that duty. The Court, therefore, also concludes Plaintiff has failed to sufficiently allege Defendants acted with an improper means. The Court, therefore, grants Defendants' Motion to Dismiss as to Plaintiff's claim for IIER.

## V.    Leave to Amend

Plaintiff requests that if the Court grants Defendants' Motion to Dismiss, the Court also grant her leave to amend her Complaint to cure any deficiencies. A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by any amendment. *See Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012)(*citing Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *Cal. Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987). *See also Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015)(leave to amend is properly denied if the proposed amendment lacks merit or would be futile in saving plaintiff's suit); *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

Here the Court finds it is not clear that the deficiencies in the Complaint may not be cured by amendment. Accordingly, the Court grants Plaintiff leave to file an amended complaint to cure the deficiencies set out in this Opinion and Order.

## CONCLUSION

The Court GRANTS Defendants' Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF 17. The Court grants Plaintiff leave to file an amended complaint to cure the deficiencies set out in this Opinion and Order no later than October 31, 2023.

IT IS SO ORDERED.

DATED: October 5, 2023 .

MARCO A. HERNÁNDEZ
United States District Judge